IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

LEONER C. MARQUEZ
    Plaintiff,

v.

DRUGS UNLIMITED, INC., DISCOUNT GENERICS, INC., CARLOS A. FRAGA
    Defendants.

Civil Action No. 08-2387 (GAG)

**OPINION AND ORDER**

Plaintiff, Leoner C. Marquez ("Plaintiff") commenced this action against her former employer, Drugs Unlimited, Inc. / Discount Generic, Inc. ("DU") and Carlos A. Fraga ("Fraga") (collectively "Defendants"), for alleged acts of age discrimination and retaliation against Plaintiff pursuant to the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621, et. seq., and for the alleged failure of her employer to comply with the requirements under the Consolidated Omnibus Budget Reconciliation Act ("COBRA"), 29 U.S.C. § 1161. Plaintiff also invokes the supplemental jurisdiction of the court to adjudicate her claims under Article 5a of Puerto Rico Law No. 45 of April 16, 1948, as amended, ("Law 45"), P. R. Laws Ann., tit. 11, § 7 et. seq.; Law No. 80 of May 30, 1976, as amended ("Law 80"), P.R. Laws Ann., tit. 29, § 185a et. seq.; and Law No. 100 of June 30, 1959, as amended ("Law 100"), P.R. Laws Ann. tit. 29, § 146 et. seq..

Presently before the court is Defendants' motion for summary judgment (Docket No. 82), which was timely opposed by Plaintiff (Docket No. 92). Defendants filed a reply brief (Docket No. 102), which was also timely opposed by Plaintiff(Docket No. 108). After reviewing the pleadings and pertinent law, the court **GRANTS in part and DENIES in part** Defendants' motion for summary judgment (Docket no. 82)..

**I.    Standard of Review**

Summary judgment is appropriate when "the pleadings, depositions, answers to

**Civil No. 08-2387(GAG)**                               2

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "An issue is genuine if 'it may reasonably be resolved in favor of either party' at trial, and material if it 'possess[es] the capacity to sway the outcome of the litigation under the applicable law.'" Iverson v. City of Boston, 452 F.3d 94, 98 (1st Cir. 2006) (alteration in original) (citations omitted). The moving party bears the initial burden of demonstrating the lack of evidence to support the non-moving party's case. Celotex, 477 U.S. at 325. "The movant must aver an absence of evidence to support the nonmoving party's case. The burden then shifts to the nonmovant to establish the existence of at least one fact issue which is both genuine and material." Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994). The nonmoving party must then "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). If the court finds that some genuine factual issue remains, the resolution of which could affect the outcome of the case, then the court must deny summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

When considering a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party (here, the plaintiff) and give that party the benefit of any and all reasonable inferences. Id. at 255. Moreover, at the summary judgment stage, the court does not make credibility determinations or weigh the evidence. Id. Summary judgment may be appropriate, however, if the non-moving party's case rests merely upon "conclusory allegations, improbable inferences, and unsupported speculation." Forestier Fradera v. Municipality of Mayaguez, 440 F.3d 17, 21 (1st Cir. 2006) (quoting Benoit v. Technical Mfg. Corp., 331 F.3d 166, 173 (1st Cir. 2003)).

**II.     Relevant Factual & Procedural Background**

Plaintiff began working for defendant DU, which at the time was known as Discount Generics ("DG") on January 1, 1991. Plaintiff occupied different positions throughout her years working for the defendant. She became the Credit Manager ("CM") of DU in 1993, where she

**Civil No. 08-2387(GAG)**                                       3

remained until her termination.

In 2006, Plaintiff alleges that officers at DU began to harass and discriminate against her based on her age and because she had attempted to oppose DU's unlawful employment practices. Plaintiff contends that the following acts constituted the discriminatory actions taken against her by her former employer: (1) co-defendant DU drastically increased Plaintiff's functions and duties, demanding results within impossible time frames and constantly threatening with disciplinary actions; (2) DU's officers, including co-defendant Fraga and the Executive Supervisor of the Credit Department, Elisa Torres ("Torres") constantly screamed and yelled at Plaintiff; (3) Fraga, on a daily basis since 2006, repeatedly told Plaintiff that she was old and ugly, old and envious, and old and skinny, while on another occasion Fraga told Plaintiff that she was so skinny that she "did not have any tits left"; (4) Yolanda Navarro ("Navarro"), Fraga's wife and fellow employee of DU, would repeat similar discriminatory comments against Plaintiff; (5) DU failed to increase plaintiff's salary and benefits, while at the same time increasing the salary and benefits of the younger employees; (6) Plaintiff was forced to accept a demotion and accept a position with a dramatic decrease in salary and benefits; (7) immediately after plaintiff's termination she claims she was replaced in her position by Evelyn Santana, a younger employee (thirty-six years old) who had only six years of seniority at DU compared with Plaintiff's sixteen years.

Plaintiff avers that all of these actions were precipitated by age-based animus, or were done in retaliation for her efforts to prevent such discriminatory behavior from occurring at work. Plaintiff contends that since the year 2006, on a monthly basis, she complained to Fraga, Navarro, and Raul Velez, regarding the discriminatory conduct and actions taken against her because of her age. She claims that no remedial actions were taken to prevent further harassment of this type in the workplace. Instead, she was repeatedly told by Torres and Fraga that if she did not like the way she was being treated, she should leave.

Prior to 2007, DG and DU were separate companies that offered similar services. Plaintiff was employed by DG. In 2007, DG and DU started to merge their operations after co-defendant

**Civil No. 08-2387(GAG)**                            4

Fraga made the decision to combine the companies' services. As of April 16, 2007, Plaintiff began to be supervised by Torres, who was appointed as Executive Supervisor of the Credit Department. In January 2008, the merger between DG and DU was complete. DU survived the merger and both companies continued their joint operation under this name. On February 11, 2008, Navarro handed Plaintiff a letter dated February 8, 2008, where she was notified that, as a result of the merger of the companies, one of the CM positions at DU would be eliminated. The letter stated that given the fact that Torres had more seniority, she would retain the position of CM. The letter offered the position of Assistant Credit Manager ("ACM") to Plaintiff, and required her signature at the bottom if she chose to accept the position as ACM. Said position included a demotion and large reduction in Plaintiff's salary and benefits.

Following her receipt of this information, the Plaintiff's and Defendant's accounts of the events differ greatly. Defendants contend that Plaintiff refused to accept the position, as demonstrated by her failure to sign the letter, and resigned from her employment on February 11, 2008. Plaintiff, on the other hand, avers that she accepted the position on the spot, but left work that day because the shock of the demotion had left her feeling ill. Plaintiff claims she did not sign the letter because she was not informed that she needed to. She further alleges that the next morning, on February 12, 2008, she called her employer at 8:34 AM and told a fellow employee that she would not be able to work today because she felt very sick. Plaintiff further contends that the position of ACM was created to demote her to try to force her involuntary resignation. She also avers that Defendant's contention in the letter of February 8th, that the CM position would be offered to Torres, is false since Torres at all times was the General Manager of both DU and DG prior to the merger and never occupied the position, nor performed the functions and duties of the CM in either company. Instead, Plaintiff insists that Evelyn Santana, who was younger and had less seniority than Plaintiff, replaced her as CM of DU once the merger had occurred. She further contends that after February 11, 2008, Denisse Colon was performing the duties of the ACM, and therefore this position had been filled during her absence.

**Civil No. 08-2387(GAG)**                                   5

The Defendants, on the other hand, contend that following the merger, the more senior Torres, who had been the CM of DU prior to the merger, retained her position as CM. Because Fraga did not want to terminate Plaintiff's employment, he created the position of ACM so she could remain employed. The Defendants contend that during the meeting on February 11, 2008, Plaintiff refused to sign the letter accepting the position and instead chose to abandon her employment with DU. Defendants claim that a letter dated February 11, 2008 was then sent to Plaintiff. The letter allegedly confirmed her previous decision to resign from her employment. Plaintiff claims that she never received this letter. Defendants further claim that because Plaintiff refused to accept the ACM position, it was eliminated and was never occupied by another employee.

On February 12, 2008, Plaintiff went to receive treatment at the State Insurance Fund ("SIF") due to her alleged emotional condition resulting from the aforementioned events. On February 27, 2008, she wrote a sworn statement before the SIF that appears to indicate that she had not accepted the position of ACM which was offered to her.[1] During her stay at the SIF, Plaintiff spoke to numerous medical professionals about the events that had caused her emotional condition.[2] The SIF determined that Plaintiff's alleged medical condition was not related to her job and did not constitute an occupational or workplace accident for purposes of worker's compensation under Puerto Rico law. On May 6, 2008, Plaintiff was discharged from treatment with the SIF.

On May 21, 2008, Plaintiff went to DU requesting that she be permitted to work in the

---

[1] While the language of the sworn statement seems to indicate that Plaintiff refused to accept the position offered to her on February 11th, she contends in her deposition that she was merely referring to the fact that she could not "accept" the whole situation, i.e. the fact that her demotion and drastic salary reduction were the result of discriminatory actions taken against her by her employer. (See Docket No. 83-10 at 15 #5-7.)

[2] Defendants argue that the failure of these medical assessments to include information regarding the alleged discrimination based on age, demonstrate that Plaintiff is fabricating these allegations. However, Plaintiff alleges during her deposition that she had in fact told the medical professionals about the age-discriminatory acts taken against her at work, and does not know why they were not included in the reports. (See Docket No. 83-2 at 108-9.)

**Civil No. 08-2387(GAG)**                                6

position which she had allegedly accepted prior to what she believed to be a leave of absence. However, Plaintiff was told that she had resigned on February 11, 2008 and therefore was no longer employed by DU. She was further told that the position that had been offered to her was eliminated and therefore was no longer available. Plaintiff then prepared a letter dated June 5, 2008, in which she purportedly reconfirmed her earlier acceptance of the employment offer made to her back on February 11, 2008.

On June 11, 2008, Plaintiff filed a discrimination charge with the Equal Employment Opportunity Commission ("EEOC") alleging that she had been discriminated against by her former employer due to her age and sex. On April 7, 2009, the EEOC determined that there was no probable cause for discrimination and dismissed Plaintiff's charge.

Plaintiff contends that at the time of her discharge, she was never informed about her rights and obligations under COBRA, and therefore was provided with no information regarding her rights and obligations to continue with her health insurance plan benefits. Defendants contend that this oversight was precipitated by Plaintiff's abrupt resignation, as well as her failure to request an exit interview, as was required by the policies established in the DU Employee Manual.[3] The COBRA letter was eventually sent to Plaintiff on or around March 9, 2009. Plaintiff alleges that DU's failure to promptly send the COBRA letter resulted in great financial losses as she had no health insurance following her alleged termination and was forced to pay all of her medical bills out of pocket.[4]

---

[3] Plaintiff alleges that she had never seen the COBRA letter when she began employment with DU, nor was the COBRA letter ever part of the employee manual while she was working for DU. Regardless, Plaintiff contends that she was not required to schedule an exit interview as she claims she did not resign from her position.

[4] Plaintiff does recognize that her medical treatment was covered for two months under the Puerto Rico Health Reform. However, she claims that she was not covered by any medical plan from April 2008 until March 2009, when the Social Security Administration approved her disability claim.

**Civil No. 08-2387(GAG)**                                    7

**III.    Discussion**

   *A.      Plaintiff's Sworn Affidavit*

Defendants contend in their reply brief (Docket No. 102) that Plaintiff has filed a "sham affidavit" for the sole purpose of creating issues of material fact in order to survive Defendants' motion for summary judgment. Defendants further contend that Plaintiff's sworn statement (Docket No. 92-3) contains countless statements clearly contradicting those statements made by Plaintiff during her previous depositions on July 2, 2009 (Docket No. 83-2) and October 2, 2009 (Docket No. 83-10). Plaintiff has utilized said sworn statement primarily to support her Responses and Objections to Defendants' Statement of Uncontested Material Facts ("ROSUMF") (Docket No. 92). Defendants, in their reply brief, ask the court to disregard the sworn statements which clearly contradict prior testimony and consider all of Plaintiff's facts, which are supported solely by this document, as unsupported.

The First Circuit has followed the other Circuits in developing its own form of the "sham affidavit" doctrine. See Colantuoni v. Alfred Calcagni & Sons, Inc., 44 F.3d 1, 4-5 (1st Cir. 1994) (citing Slowiak v. Land O'Lakes, Inc., 987 F.2d 1293, 1297 (7th Cir. 1993); Trans-Orient Marine v. Star Trading & Marine, 925 F.2d 566, 572-73 (2d Cir. 1991); Davidson & Jones Dev. v. Elmore Dev., 921 F.2d 1343, 1352 (6th Cir. 1991)). In deciding Colantuoni, the First Circuit held that, "[w]hen an interested party has given clear answers to unambiguous questions, he cannot create a conflict and resist summary judgment with an affidavit that is clearly contradictory, but does not give a satisfactory explanation of why the testimony is changed." 44 F.3d at 4-5. In explaining the manner in which such documents should be dealt with, the First Circuit declared that district courts are in a unique position to assess these "sham affidavits" and, therefore, are entitled to disregard portions of affidavits that include new information, whenever said information is contradictory to previous testimony and was clearly asked for in previous questions. See Hernandez-Loring v. Universidad Metropolitana, 233 F.3d 49, 54 (1st Cir. 2000). The Hernandez-Loring court further emphasized that "in applying this rule, it is critical that there be no 'satisfactory explanation' since lapse of memory, new sources of information or other events can often explain a revision of

**Civil No. 08-2387(GAG)**                                      8

testimony." Id. at 55 (considering portion of affidavit where only inconsistency with previous testimony was specificity of language.)

Therefore in assessing whether or not to disregard statements attested to by Plaintiff in her sworn affidavit, the court must analyze whether these statements are unambiguously contradictory to Plaintiff's previous testimony. In conducting this analysis the court will address only those statements which the court finds contradict Plaintiff's previous deposition testimony and are pertinent to creating material issues of fact necessary for the survival of Plaintiff's claim.

### 1.  ROSUMF #'s 7, 11, 12, 19

In her sworn statement, Plaintiff contends that she was the CM for both DU and DG, and that Torres never handled the duties of CM at any point. (See Docket No. 92: Exhibit 1 at ¶ 4.) This statement is directly contradictory to her previous deposition testimony in which she states she was CM for only DG prior to the merger and not DU. (See Docket No. 83-2 at 30 # 1-3, 18-20). She also contradicts her previous deposition testimony in which she states that she did not know who was responsible for the duties of the CM at DU prior to the merger. (See Docket No. 83-2 at 84 # 1-2.) Additionally, during her deposition testimony, Plaintiff regularly refers to herself as the Credit Manager for DG and describes the duties of said position. (See Docket No. 83-2 at 27 # 2-4; 25 # 11-16.) These statements directly contradict her sworn assertion that her employer never had any type of job titles or descriptions for the positions at the companies. (See Docket No. 92: Exhibit 1 at ¶ 4.) Furthermore, contrary to Plaintiff's assertion that there are no documents which establish the existence of the Credit Manager position at either DG or DU (See Docket 92-2 at 3 ¶ 19), Defendants have offered a 2008 document, the authenticity of which has not been contested by Plaintiff, that contains both job titles as well as salaries of DU employees. (See Docket No. 83-4.)

Plaintiff provides no explanation for these inconsistencies between her sworn statement and deposition testimony. Thus, the court disregards Plaintiff's facts supported by citation to these segments of the sworn statement. See Coluntuani, 44 F.3d at 4-5. The court deems admitted Defendants facts that, prior to the merger, Plaintiff was the CM for DG only, and that Torres acted as the CM for DU (as Plaintiff has presented no evidence to contest this fact). Therefore, contrary

**Civil No. 08-2387(GAG)**                                                 9

to Plaintiff's assertions in her sur-reply (Docket No. 108 at 4), the following issues are not material facts in controversy: whether the position entitled Credit Manager existed at either DG or DU; and whether it was Torres or Plaintiff who performed the functions or occupied the position of Credit Manager at DU prior to the merger.

### 2.     ROSUMF # 30

In her deposition, upon a specific question posed by Defendants' attorney, Plaintiff states that the offering of the ACM position was *not* related to her age. (See Docket No. 83-2 at 88 # 15-18.) However contrary to this assertion, Plaintiff contends in her sworn statement that she merely misspoke when she made this statement and alleges that she clearly corrected this mistake of speech with other statements made in her deposition. (See Docket No. 92-3 at 4 ¶17.) In support of this contention, Plaintiff cites to statements in her first deposition of July 2, 2009, at pages 32, 56, 79, and 86, and her second deposition on October 2, 2009, at pages 15, 16, and 20. In considering these citations the court finds that Plaintiff's cited statements do not clearly correct what she characterizes as a mistake of speech. Throughout all of the cited statements, Plaintiff is merely making reference to past incidents in which Fraga had threatened to demote her and move her to the warehouse. Even when taken as true, none of these cited statements directly refers to the tangible employment action, her demotion to ACM, which Plaintiff alleges was precipitated by age-based animus.

Furthermore, Plaintiff's sworn statement is clearly inconsistent with Defendant's Exhibits 6 and 11. Exhibit 6, which is Plaintiff's sworn statement to the SIF, contains a question in which the investigator asks Plaintiff why she believes she was demoted by her employer. In response Plaintiff states "[h]e told me that many people complained about me, that I … did not have good communication and that no one could stand working with me." (See Docket No. 89-6 at 4-5.) Exhibit 11, Plaintiff's initial psychology report at the SIF, reports that "[p]atient states that she was demoted from her position and salary, due to the merger of two companies and positions." (See Docket No. 89-10 at 1.) Both of these statements support Plaintiff's initial testimony from her earlier deposition, that age had nothing to do with her previous employer's decision to demote her. In an attempt to respond to Defendants' evidentiary showing, Plaintiff highlights Exhibit A (Docket

**Civil No. 08-2387(GAG)**                     10

No. 108-2). However, this document merely reiterates that Plaintiff received a notice notifying her of a demotion in position and salary, and that this news depressed her. (See Docket No. 108-2.). This written statement does not support Plaintiff's contention that she had misspoken in her deposition when she stated that her demotion had nothing to do with her age.

Finally, Plaintiff does not provide a sufficient explanation as to why her deposition testimony contains such a striking contradiction to her subsequently made sworn statement. To explain the contradiction, Plaintiff merely contends in her sworn statement that she misspoke at that point during the deposition, but later corrected this error in the deposition. (See Docket No. 92-3 at 3-4 ¶ 17.) However, Plaintiff provides no evidentiary support for this assertion, as all of her cited evidence is not consistent with the later testimony found in her sworn statement.

Therefore, because paragraph 17 of Plaintiff's sworn statement contradicts her previous deposition testimony, and because Plaintiff's other cited support for ROSUMF # 30 does not support the factual statement, the court deems admitted Defendants Statement of Uncontested Material Facts ("SUMF") #30, and holds, contrary to Plaintiff's assertion, that there is not a contested issue of material fact with regard to whether Plaintiff was demoted to the position of ACM as a result of age-based animus.

### 3. ROSUMF # 31

In Plaintiff's ROSUMF # 31, she alleges that Evelyn Santana replaced her in her position after February 11, 2008. She supports this factual allegation only with a citation to paragraph 19 of her sworn statement. This allegation directly contradicts Plaintiff's previous deposition testimony in which she stated the younger employee that she was replaced by was Mrs. Elisa Torres (who, at the time, was both over the age of 40 and had more seniority than Plaintiff). (See Docket No. 83-2 at 81 # 3-7.) The sworn statement is clearly contradictory to Plaintiff's deposition testimony. Furthermore, Plaintiff does not give a sufficient explanation as to why this contradiction exists between these two sworn testimonies. For these reasons, the court disregards Plaintiff's sworn statement testimony, and deems Defendants' SUMF # 31 admitted for summary judgment purposes. Therefore it is an uncontested fact that no other employee has been appointed to occupy either

**Civil No. 08-2387(GAG)**                                         11

Plaintiff's former CM position or the ACM position after February 11, 2008.

      *B.*      *ADEA Claims*

           **1.**      **Liability of Fraga**

While neither the Supreme Court nor the First Circuit has addressed the issue of personal liability under the ADEA, this court "has followed the majority of circuits that have confronted this issue holding that no personal liability can attach to agents and supervisors under . . . [the] ADEA." Vizcarrondo v. Bd. of Trs. of Univ. of P.R., 139 F. Supp. 2d 198, 205 (D. P. R. 2001) (quoting Julia v. Janssen, Inc., 92 F.Supp.2d 25, 28-29 (D. P. R. 2000) (citations omitted)).  Therefore, all claims brought against Fraga pursuant to the ADEA are hereby **DISMISSED** with prejudice.

           **2.**      **Unlawful Demotion or Discharge**

The ADEA makes it unlawful for an employer to "fail or refuse to hire or discharge any individual or otherwise discriminate against any individual. . . because of such individual's age." 29 U.S.C. § 623 (a)(1).  To establish a *prima facie* case under the ADEA framework, a plaintiff must prove four elements: (1) that she was over 40 years old; (2) that she has met her employer's legitimate job expectations; (3) that the employer took adverse action against her (4) and that the employer did not treat age neutrally or that younger persons were retained in the same position. Herbert v. Mohawk Robber Co., 872 F.2d 1104, 1111 (1st Cir. 1989).  Once a plaintiff makes the *prima facie* showing, the burden of production then shifts to the employer to articulate a legitimate, non-discriminatory reason for its decisions.  See Velez v. Thermo King de Puerto Rico, Inc., 585 F.3d 441, 447 (1st Cir. 2009).  The plaintiff must then rebut the given explanation by providing evidence that the reason was merely pretext for illegal discrimination.  Id.  The Supreme Court has recently declared that "a plaintiff bringing a disparate-treatment claim pursuant to the ADEA must prove, by a preponderance of the evidence, that age was the 'but-for' cause of the challenged adverse employment action." Gross v. FBL Fin. Services, Inc., 129 S.Ct. 2343, 52 (2009).  The Court declared in Gross that this "but for" standard is a much higher standard than that which has been

**Civil No. 08-2387(GAG)**                               12

applied in Title VII cases.[5] See id. at 2351.

With regard to Plaintiff's unlawful discharge or demotion claim under the ADEA, Plaintiff is unable to establish a *prima facie* case of discrimination. Because the court has disregarded a number of Plaintiff's unexplained contradictory statements provided by her sworn statement, Plaintiff is unable to refute a number of Defendant's statements of uncontested facts in order to create an issue of material fact with respect to some of the *prima facie* elements of the charge. As discussed above, Plaintiff has not effectively refuted Defendants' contention that 1) Plaintiff's demotion was not at all based on her age; and 2) no individual, let alone one demonstrating her employer's inability to treat age neutrally, has occupied Plaintiff's former position after her departure. Therefore, because Plaintiff is unable to create a material issue of fact with respect to these *prima facie* elements, the court **DISMISSES,** with prejudice, Plaintiff's ADEA claim based on her alleged unlawful demotion or discharge.

### 3.   Hostile Work Environment Claim

ADEA claims can also come in the form of hostile work environment claims, however the statute does not provide for compensatory damages for pain and suffering. See Collazo v. Nicholson, 535 F.3d 41, 44 (1st Cir. 2008). To succeed in a hostile work environment claim, the Plaintiff must show that: (1) they are a member of a protected class; (2) they were subjected to unwelcome harassment; (3) the harassment was based on age; (4) the harassment was sufficiently pervasive or severe so as to alter the conditions of Plaintiff's employment and create an abusive work environment; (5) the objectionable conduct was both objectively and subjectively offensive such that a reasonable person would find it hostile or abusive and that Plaintiff did in fact perceive it to be so; and (6) some basis for employer liability has been established. See O'Rourke v. City of Providence, 235 F.3d 713, 728 (1st Cir. 2001).

---

[5] Title VII protection has recently been amended by explicitly authorizing discrimination claims in which an improper consideration was a "motivating factor" in an adverse employment decision. See 42 U.S.C § 200e-2(m).

**Civil No. 08-2387(GAG)**                                         13

Plaintiff alleges that beginning in 2006, co-defendant Fraga as well as other employees of DU began harassing Plaintiff on a daily basis, constantly telling her that she was "old and worthless," "old and ugly," "old and slow," "old and stupid," "old and skinny," and that on occasion she was told that "she was so skinny she did not have any tits left." Plaintiff alleges other actions taken by her employer that she characterizes as age-based discrimination, however the court finds that these actions do not constitute discrimination based on age for purposes of her hostile work environment claim.[6] Plaintiff further alleges that, as a result of the daily harassment she received at the hands of her employer, she was forced to seek medical treatment due to her resulting mental and emotional condition. Based upon these allegations, which are supported by Plaintiff's deposition testimony, as well as the deposition testimony of Carmen Ayala Cruz, the court finds that Plaintiff has created an issue of material fact as to whether she was subjected to a hostile work environment fostered by age-based discrimination. See Quiles-Quiles v. Henderson, 439 F.3d 1, 7 (1st Cir. 2006) (finding evidence of daily ridicule of plaintiff's disability, coupled with evidence of hospitalization as a result of the ridicule, sufficient for finding a hostile work environment); see also

---

[6] Plaintiff alleges that she was not allowed to attend certain seminars because of her age. However, Defendant alleges that other employees over the age of forty attended these seminars, a fact which Plaintiff does not refute. Her allegation that these employees never voiced any complaints is not supported by any evidence on the record. Therefore, Plaintiff has failed to demonstrate that her employer's decision to prevent her attendance at these seminars was based on her age. Plaintiff also points to increases in younger employees' salaries as indications of age-based animus, however the raises which she identifies were given to employees that did not occupy the same position as Plaintiff, and were therefore not similarly situated. See Rodriguez-Torres v. Government Development Bank of Puerto Rico, 2010 WL 682938 at *11 (D.P.R. 2010) (dismissing plaintiff's wage discrimination claims where she did not have same position as those employees given raises). Plaintiff also points to comments made by Navarro in which she stated on numerous occasions that she would prefer to hire only men instead of old women. Plaintiff alleges that this comment was not made directly to her but was made in her work area. The court finds that this type of innocuous comment, when not directed toward an individual, does not rise to the requisite level of pervasive or severe harassment. See id. at 16 (overheard statements not directed at plaintiff did not support inference of age discrimination). Plaintiff also claims that during this time she was given drastic increases in her functions and duties, and that her employer demanded results within impossible time frames, however there is no evidence demonstrating that either of these allegations were related to age-based animus.

**Civil No. 08-2387(GAG)**                              14

Franco v. Glaxosmithkline, 2009 WL 702221 at *27 (D.P.R. 2009) (remarks about plaintiff's age made three to four times per day on a daily basis were "severe enough that a rational fact finder could find [this evidence] sufficient to sustain a claim of hostile work environment.").

Therefore the court **DENIES** Defendants' motion for summary judgment with regard to Plaintiff's hostile work environment claim under the ADEA.

### 4.    Retaliation Claim

Plaintiff also makes a claim of retaliation under the ADEA, alleging that many of the aforementioned discriminatory actions taken against her were done in retaliation for Plaintiff's efforts to oppose Defendants' discriminatory conduct. "In addition to prohibiting age discrimination, the ADEA also protects individuals who invoke the statute's protections." Ramirez Rodriguez v. Boehringer Ingelheim Pharmaceuticals, Inc., 425 F.3d 67, 84 (1st Cir. 2005) (citing 29 U.S.C. § 623(d)).  To make out a claim for retaliation the plaintiff must make a prima facie showing that (1) she engaged in ADEA-protected conduct; (2) she was thereafter subjected to an adverse employment action; and (3) a causal connection existed between the protected conduct and the adverse action. Id. (quoting Mesnick v. Gen. Elec. Co., 950 F.2d 816, 827 (1st Cir. 1991)).

With regard to her retaliation claim, Plaintiff is unable to support the contention that any of the alleged adverse actions taken against her were done in direct response to the complaints made to the officers at DU.  During her deposition, Plaintiff was unable to provide any dates in which she discussed her concerns with the officers at DU.  She merely repeated that she had complained to Navarro "several" times (See Docket No. 83-2 at 90 #21) and to Velez "once" (See Docket No. 83-2 at 80 #8).  Moreover, this deposition testimony is completely contradictory to Plaintiff's sworn statement in which she contends that she complained to these individuals on a monthly basis for three years.[7] (See Docket No. 92-3 at 3 #'s 15, 16.)  Without an idea of when such complaints were

---

[7] These unexplained contradictory statements compel the court to disregard the allegations made in the sworn statement, as they are self-serving and conflict with prior sworn deposition testimony.  (See supra, Section A.)

**Civil No. 08-2387(GAG)**                                15

made, the court is unable to construct a time line in order to address whether or not the alleged discriminatory actions occurred within a proximate time period after the complaints were made by Plaintiff. Such evidence, while not determinative, is a significant factor in considering a claim of retaliation. See Decaire v. Mukasey, 530 F.3d 1, 19 (1st Cir. 2008) (holding that temporal proximity alone can be sufficient to establish *prima facie* case of retaliation); see also Noviello v. City of Boston, 398 F.3d 76, 86 (1st Cir. 2005) (holding that "[w]hen harassment follows hard on the heels of protected activity, the timing often is strongly suggestive of retaliation.").

Though the court has recognized that Plaintiff would have great difficulty demonstrating causation, it also recognizes that the employee's burden to establish a *prima facie* case in the retaliation context "is not an onerous one". See Dennis v. Osram Sylvania, Inc., 549 F.3d 851, 858 (1st Cir. 2008) (quoting Calero-Cerezo v. U.S. Dep't.of Justice, 355 F.3d 6, 26 (1st Cir. 2004)). However, even if Plaintiff is able to formulate a *prima facie* retaliation claim under the ADEA by alleging that her ultimate demotion and dismissal were precipitated by age-based discrimination, Defendant's motion would still prevail under the McDonnell-Douglas burden shifting analysis. See Dennis, 549 at 858-59 (1st Cir. 2008) (affirming dismissal of retaliation claim because plaintiff did not "adequately counter[] the legitimate non-discriminatory reasons . . . proffered [by defendant]."). Plaintiff has failed to present any substantial evidence refuting Defendant's non-discriminatory explanation for her demotion and ultimate dismissal.[8] Although Plaintiff' opposition contains numerous averments alleging the insincerity of Defendant's proffered reason, she is unable to support these allegations with any substantive evidence.

Therefore, as Plaintiff has failed to satisfy her evidentiary burden in opposing Defendants' motion for summary judgment, the court **GRANTS** Defendants' summary judgment motion with respect to Plaintiff's retaliation claim and **DISMISSES** the same with prejudice.

---

[8] Defendants contend that Plaintiff's demotion was the result of a merger of two companies which resulted in a need for a reduction in force. Following the merger, Plaintiff's position was no longer necessary and as a result she was offered the position of Assistant Credit Manager. Defendant's further contend that Plaintiff's position was eliminated and has not been occupied since.

**Civil No. 08-2387(GAG)**                              16

**C.     COBRA Claim**

COBRA mandates that employers give former employees the opportunity to continue coverage under the employer's group health plan if a qualifying event occurs. See 29 U. S. C. § 1161(a). Termination of employment, other than by reason of the employee's gross misconduct, is a qualifying event, and requires that the employer notify the administrator of the group health plan within thirty days of the termination. See 29 U. S. C. §1163 (2).

In the instant case, a qualifying event occurred when Plaintiff ceased to be employed at DU.[9] It is uncontested that following this date, Plaintiff did not receive any type of notice informing her of her rights and obligations under COBRA, until March 9, 2009. Defendants contend that this delay occurred as a result of Plaintiff's failure to comply with the proper employment procedures for resignation. Defendants aver that because Plaintiff did not request an exit interview at the time of her resignation, she did not receive the COBRA notice on time. Plaintiff, on the other hand, contends that she never resigned on that date, but instead accepted the ACM position which she was offered on February 11, 2008. Although Plaintiff's contention, given the inconsistencies in her testimony, is tenuous at best, she does attempt to explain the inconsistent statements in her deposition. (See Docket No. 83-10 at 15 # 5-7.) In considering these statements in the light most favorable to the Plaintiff, the court finds that Plaintiff has created a triable issue of fact with regard to whether or not she resigned from her employment on that date and was, therefore, required to request an exit interview.

In their motion for summary judgment, Defendants cite that courts have been reluctant to impose statutory penalties under COBRA in the absence of a showing of bad faith and when the failure to notify has not resulted in any prejudice to the plaintiff. See Rodriguez-Abreu v. Chase Manhattan Bank, N.A., 986 F.2d 580, 588-89 (1st Cir. 1993). Plaintiff alleges, that although her medical expenses were covered by the Puerto Rico Health Reform for two months after her benefits

---

[9] DU continued to pay medical expenses on behalf of Plaintiff until April 1, 2008. The record is unclear as to why these payments were made following Plaintiff's alleged resignation.

**Civil No. 08-2387(GAG)**                    17

were terminated, she was still prejudiced by Defendants' failure to give her timely notice of her rights under COBRA. Between June 2009 (the approximate date when Plaintiff's benefits under the Puerto Rico Health Reform ended) and March 9, 2009 (when she was informed of her rights under COBRA), Plaintiff alleges she was forced to pay all of her medical costs out-of-pocket, requiring her to forgo some psychological treatment. (See Docket No. 92-3 at 4-5 #22.) Furthermore, she contends that Defendants were aware that she was receiving medical treatment at SIF, but purposely still failed to inform Plaintiff of her COBRA benefits. (See Docket No. 92-3 at 5 # 23.)

In considering the above allegations, the court finds that Plaintiff has presented a material issue of fact with regard to whether or not she was in fact prejudiced by Defendants' delay in informing her of her COBRA benefits, and whether this delay was precipitated by bad faith. Therefore the court **DENIES** Defendants' motion for summary judgment with regard to 's COBRA claim.

    *D.*    **Local Law Claims**

        **1.**    **Law 100 Claim**

The First Circuit has held that "on the merits, age discrimination claims asserted under the ADEA and under Law 100 are coterminous." Davila v. Corporacion De Puerto Rico Para La Difusion Publica, 498 F.3d 9, 18 (1st Cir. 2007). "As applied to age discrimination, it differs from the ADEA only with respect to how the burden-shifting framework operates." Id. As discussed under the above ADEA analysis, the Plaintiff did not sufficiently oppose Defendants' SUMF #30, which alleged that Plaintiff's demotion was not motivated by age based animus. (See supra, Section B 2.) Therefore, the court holds that Plaintiff is unable to meet the evidentiary burden to sustain her claim under Law 100, and **DISMISSES** this claim with prejudice.

        **2.**    **Law 80 Claim**

Plaintiff also brings forth a Law 80 claim, alleging that she was discharged without just cause. "An employee's initial burden under Law 80 is to allege unjustified dismissal and prove actual dismissal. If the employee meets this burden, the employer must establish by a preponderance of the evidence that the discharge was made for good cause." Hoyos v. Telecorp Communications,

**Civil No. 08-2387(GAG)**                                              18

Inc., 405 F. Supp. 2d 199, 205-06) (internal quotations omitted).  Pursuant to the statute, just cause for termination is defined in pertinent part, as "[f]ull, temporary or partial closing of the operations of the establishment;"or "[t]echnological or reorganization changes as well as changes of style, design or the nature of the product made or handled by the establishment, and changes in the services rendered to the public."  P.R. Laws Ann., tit. 29, § 185b et. seq.  Pursuant to the prior analysis, the court holds that Defendants have provided just cause for termination of Plaintiff's position and have supported this contention by a preponderance of the evidence.  Furthermore, Plaintiff is unable to produce any sufficiently probative evidence refuting Defendants' proffered reason.

### 3.   Law 45 Claim

Plaintiff's Opposition to Defendants' motion for summary judgment fails to oppose any of Defendants' arguments regarding the validity of Plaintiff's Law 45 claim.  Defendants contend that Plaintiff's claim fails because the State Insurance Fund ("SIF") Act establishes that an employer must reserve the job of an employee that has sought treatment under the SIF, and reinstate the employee to her job after she is discharged from the SIF, subject to the following pertinent condition: "that said job still exists at the time the laborer or employee demands reinstatement."  Defendants contend that at the time Plaintiff asked to be reinstated on May 21, 2008, neither her former CM position nor the ACM position they had offered her on February 11, 2008 still existed.  Therefore DU was under no obligation to reinstate Plaintiff after her discharge from the SIF.  See Salva v. Eagle Global Logistics, 2006 WL 2685109, *3 (D.P.R. 2006) (dismissing claim under Law 45 because Plaintiff's position no longer existed at the time they demanded reinstatement).  While Plaintiff avers that Defendants' contentions regarding these positions is untruthful, she is unable to proffer any evidence supporting her allegations of pretext.  Therefore, the court **DISMISSES,** with prejudice**,**  Plaintiff's Law 45 claim.

Furthermore, Plaintiff's allegations of retaliation by her employer for her seeking aid at the SIF also fail to state a viable claim.  See P.R. Laws Ann. tit. 29 § 194(a) ("Law 115").  Even if Plaintiff's allegations are taken as true, the reorganization changes implemented by DU were done and notified to Plaintiff on February 11, 2008, prior to her seeking treatment at the SIF on February

**Civil No. 08-2387(GAG)**                                19

12, 2008. Therefore, the elimination of her position and subsequent demotion could not have been related to her stay at the SIF. Once Plaintiff was discharged by the SIF, both her former CM position and the ACM position had been eliminated, and thus DU was under no obligation to reinstate the Plaintiff into either position. Therefore, DU's actions in not reinstating Plaintiff cannot be viewed as retaliatory either, and thus do not garner the protection of Law 115. As such, the court **DISMISSES**, with prejudice, Plaintiff's claim for retaliation under Law 115.

### III.    Conclusion

For the foregoing reasons, the court **GRANTS** in part and **DENIES** in part Defendants' motion for summary judgment. The only claims remaining before this court are Plaintiff's ADEA hostile work environment claim against co-defendant DU, and the COBRA claim against co-defendant DU. All remaining claims are **DISMISSED** with prejudice.

**SO ORDERED**

In San Juan, Puerto Rico this 22nd day of March, 2010.

*S/Gustavo A. Gelpí*
GUSTAVO A. GELPÍ
United States District Judge